Eastern District of Kentucky
FILED

DEC 1 4 2006

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 06-CV-096-JMH

TERRY REED                                                          PLAINTIFF

VS:                    **MEMORANDUM OPINION AND ORDER**

UNITED STATES OF AMERICA                               DEFENDANT

\* \* \* \* \* \* \* \* \*

This matter is ripe for decision on the motion of the United States to dismiss the instant

negligence action for lack of subject matter jurisdiction [Record No. 13]. For the reasons set out

below, the Court will grant the motion.

BACKGROUND

On April 7, 2006, the prisoner-plaintiff herein filed a *pro se* civil rights complaint, pursuant

to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§1346(b), 2671, *et. seq.*, and he later paid the

district court filing fee of the time, $250.00.

Plaintiff Reed alleged that while he was incarcerated at the Federal Medical Center, in

Lexington, Kentucky, during two periods of time occurring between July 13, 2000, and October 31,

2003,[1] and totaling 36 months, prison personnel were negligent in handling smoking within his

housing unit. He claims that he spent virtually 24 hours per day in Cardinal Unit, with 300 other

prisoners, spread over a three-story building. The Federal Bureau of Prisons' ("BOP") smoking

policy at the time was that inmates could smoke only in designated areas of the unit, but inmates

---

[1] Reed was in the Federal Medical Center in Lexington from July 13, 2000, to November 17, 2000, and
again from February 8, 2001, to October 31, 2003, at which time he was transferred to a federal prison camp.

ignored the policy and smoked throughout the building. Although an inmate could be disciplined for violating the smoking policy, the BOP personnel allegedly did nothing to enforce the policy. Purportedly, this caused high levels of environmental tobacco smoke ("ETS") to "hover" constantly in the air of the building, which was old and had no air conditioning or other special ventilation system in place.

Plaintiff describes a series of complaints which he made through the BOP administrative remedy scheme about the ETS and its effect on his health, and he recites the staff members' responses, which he characterizes as ignoring him and his problems. Reed also claims that he made "numerous" requests to be moved to a unit which enforced the no smoking policy, but these requests were denied.

The plaintiff alleges that as a result of the Bureau of Prisons employees' negligence, he was exposed to and made sick by the ETS. He contends that he began to suffer difficulty in breathing, developed asthma, and had other respiratory problems. By June 3, 2003, he had been prescribed a steroid inhaler. Eventually, on October 20, 2003, the Cardinal Unit's designated smoking area was moved to the courtyard and the building became smoke-free. However, the plaintiff was transferred to another facility only 11 days later. In his new non-smoking environment, Reed alleges, his breathing problems eased.

After filing an FTCA administrative claim and receiving a denial of the claim, the plaintiff filed the instant action, seeking substantial damages for the negligence of BOP officials. The Court directed the issuance of summons and the plaintiff proceeded to serve his complaint on the United States, the only proper defendant in an FTCA action. On September 18, 2006, the defendant responded with the motion to dismiss which is before the Court today.

2

## DEFENDANT'S MOTION

The United States moves the Court to dismiss this action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure [hereinafter Fed.R.Civ.P.] 12(b)(1). Record No. 13. The defendant attaches a memorandum of law, which has attached to it the supporting declaration of Cardinal Unit's Manager, who, in turn, describes the rules and methods of enforcement of rules at the relevant time and provides copies of excerpts from several relevant BOP policies, all of which purportedly call for discretion to be exercised in their implementation.

The government begins with the facts, including the fact that at the time complained of, there were no non-smoking housing units at the prison. Further, the United States contends, there was also no statute, regulation or policy mandating any particular course of action by staff with regard to the circumstances described by the plaintiff. The enforcement of the BOP policy on ETS, the air ventilation system in the plaintiff's housing unit, and decisions on his requests to be assigned to another unit--all describe functions which are left up to the BOP's discretion.

It is the United States' position that because the BOP personnel's actions were discretionary, they fall under an exception to the FTCA's waiver of immunity. 28 U.S.C. §2680(a), commonly called the discretionary function exception, bars liability for government employees' discretionary acts. The defendant sets out the entirety of 28 U.S.C. §2680(a), the rationale behind its protection of certain governmental actions, and relevant case law.

The government then describes how the claims alleged herein meet the two prongs necessary for the discretionary function to apply under standards set by the Supreme Court of the United States. In support of this position, the United States points to portions of the attached policies which leave to the discretion of BOP personnel the handling of unit management (Program Statement [hereinafter

3

"P.S."] 5321.07), the discipline of inmates (P.S. 5270.07), and the classification and appropriate location of prisoners (P.S. 5100.07).

The United States asks the Court to dismiss the instant action because liability for such discretionary functions is barred by 28 U.S.C. §2680(a).

## PLAINTIFF'S RESPONSE

The plaintiff has submitted a response [D.E. 18] in opposition to the motion. Citing to the same Supreme Court authority, the plaintiff argues that the discretionary function exception does not apply herein because there is more relevant policy which specifically calls for a certain course of action for the federal employees to follow, and thus the actions complained of herein fall outside the discretionary category. He relies on and provides copies of several portions of policy found in the BOP's Program Statement ("P.S.") 1640.03, Smoking/No Smoking Areas, in effect at the time complained of herein.[2]

The program statement begins with a statement of purpose, *i.e.*, in order to give effect to health concerns in 28 C.F.R. 551.160, *et seq*, the BOP "will restrict areas and circumstances where smoking is permitted." Reed has highlighted the "shall," "will," and "must" language throughout P.S. 1640.03 as dictating specific actions, and claims that had the policy used more permissive language, such as "may" or "should," only then it would have indicated discretion. Since the actions dictated therein are mandatory, they are not discretionary. Thus, they do not fall under the discretionary function exception, and the BOP may be held liable.

The plaintiff again recites a list of his repeated administrative attempts to obtain protection

---

[2] Program Statement 1640.03 was in effect from August 1, 1994, until July 15, 2004, when P.S. 1640.03 was superseded by P.S. 1640.04. The new program statement effectively bans all indoor smoking at BOP facilities, with limited exceptions not applicable in this case.

4

from the ETS exposure and the BOP staff's responses thereto. He also contends that the government has failed to recognize the distinction between designing a non-smoking area, which may be discretionary and hence protected, and the failure in implementing and enforcing policy when health hazards are called to the BOP's attention and ignored.

Plaintiff Reed attaches to his response not only copies of his repeated ETS complaints to staff, but also 10 affidavits of fellow inmates who attest to the prevailing conditions in their unit at the time complained of, the inmate population therein, the amount of smoking in non-smoking areas, and the number and location of staff members for enforcing the smoking policy. On the facts herein, the plaintiff contends, the discretionary function exception cannot shield the government from liability for its negligent conduct.

Therefore, the plaintiff asks that the defendant's current motion be denied and this case move forward to discovery.

REPLY

The government has filed a reply, wherein it notes the plaintiff's distinction between negligent design and the negligence in the implementation and enforcement of smoking policy. However, it comes to the opposite conclusion, *i.e.*, that implementation and enforcement are exactly the types of duties which shelters the United States under the discretionary function exception of the FTCA. The same is purportedly true with regard to the other inmates' affidavits about conditions there, *i.e.*, the affiants' reports on the number of staff enforcing the policy, their location, how often they made rounds to enforce the policy are all discretionary duties.

With regard to the provisions of P.S. 1640.03, upon which the plaintiff has relied, the government admits that there is mandatory language therein, imposing duties as to designating no

5

smoking facilities, but there is no mandatory language with regard to the *manner* in which the requirements are implemented or enforced (emphasis of the defendant). In addition to pointing to the BOP policies/program statements attached to its motion as calling for discretion, the United States now also relies on a regulation, 28 C.F.R. § 541.10, which gives the staff broad discretion as to the manner of enforcing BOP rules and policies. The defendant quotes the relevant portion of the regulation as follows: ". . . Staff shall take disciplinary action *at such times and to the degree necessary* to regulate institution guidelines." 28 C.F.R. §541.10(b)(2) (emphasis of the defendant).[3] Thus, the government insists, the discretionary function exception must be applied and this case must be dismissed for lack of subject matter jurisdiction.

## DISCUSSION

### Governing Principles

The Court begins with the fundamental rule that the United States cannot be sued without a waiver of its sovereign immunity. *See United States v. Orleans*, 425 U.S. 807, 814 (1976). The federal courts do not have jurisdiction to consider actions for monetary damages against the United States unless sovereign immunity has been waived. *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *United States v. Testan*, 424 U.S. 392 (1976); *see also Will v. Michigan Dept. of State Police*, 109 S.Ct. 2304 (1989); *Kentucky v. Graham*, 473 U.S. 159 (1985).

The FTCA, 28 U.S.C. §§1346(b), 2671§2671, *et seq.*, is a limited waiver of sovereign

---

[3]     The pertinent portion of the regulation reads in its entirety, as follows:

Staff shall take disciplinary action at such times and to the degree necessary to regulate an inmate's behavior within Bureau rules and institution guidelines and to promote a safe and orderly institution environment.

28 C.F.R. §541.10(b)(2)

immunity. It neither creates a cause of action against the United States nor provides a means of enforcing federal statutory duties. *Myers v. United States*, 17 F.3d 890 (6th Cir. 1994). It simply constitutes the United States' consent to be sued in tort actions: "for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment...." 28 U.S.C. §1346(b).

The Supreme Court of the United States has specifically held that the FTCA applies to federal inmates' claims alleging personal injuries sustained while incarcerated because of negligence of government employees. *See United States v. Muniz*, 374 U.S. 150 (1963).

However, there are several limitations to the FTCA. The first is a general rule that waivers of sovereign immunity are to be strictly construed. *See Spannaus v. Department of Justice*, 824 F.2d 52, 55 (D.C. Cir. 1987). The FTCA itself further limits liability to only circumstances in which "a private individual [would be liable] under like circumstances." 28 U.S.C. §2674. There are also statutory exceptions to governmental liability in the Act, codified at 28 U.S.C. §2680. The first exception therein is the discretionary function exception, upon which the United States relies in this case. The statute explicitly provides that immunity is not waived, *i.e.*, the government is not subject to tort liability for

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. §2680(a); *see Myers v. United States*, 17 F.3d at 894.

According to the U.S. Supreme Court, this portion of the legislation "marks the boundary

between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S. A. Empresa de Viacao Aerea Rio Grandense [Varig Airlines]*, 467 U.S. 797, 808 (1984). Congress believed that imposing liability on the government for its employees' discretionary acts "would seriously handicap efficient governmental operations." *Id.* at 814.

If an alleged act falls within the discretionary function exception to the FTCA, the Court lacks subject matter jurisdiction and the cause must be dismissed. *Rich v. United States*, 119 F.3d 447, 450 (6th Cir. 1997) (citing *Freyers v. United States*, 749 F.2d 1222, 1225 (6th Cir. 1984), *cert. denied*, 471 U.S. 1125 (1985)), *cert. denied*, 523 U.S. 1047 (1998). Accordingly, whether this exception applies is a threshold issue, and the analysis of the exception must precede any negligence analysis. *See Miller v. United States*, 710 F.2d 656 (10th Cir.), *cert. denied*, 464 U.S. 939 (1983).

The Supreme Court of the United States has developed a two-part inquiry, sometimes referred to as the *Berkovitz-Gaubert* test, to guide application of the FTCA's discretionary function exception. *United States v. Gaubert*, 499 U.S. 315, 322 (1991); *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988). If both parts of the test are established, then the discretionary function exception applies and the federal court's consideration of the claim(s) is barred.

For the exception to apply, the first step requires that the challenged governmental action be the product of "judgment or choice." *Gaubert*, 499 U.S. at 536-37 (quoting *Berkovitz*, 486 U.S. at 536). Under this prong, the Court must determine whether a statute, regulation, or policy mandates a specific course of action. If such a mandate exists, the discretionary function exception does not apply and the claim may move forward. When no mandate exists, however, the governmental action is considered the product of judgment or choice (*i.e.*, discretionary), and the first step is satisfied.

8

If, however, the action taken does involve choice, or discretion, thus satisfying the first part of the inquiry, the Court must go on to the second prong, which is to "determine whether that judgment is the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536-37. This exception shields only those decisions based on "considerations of public policy." *Gaubert*, 499 U.S. at 323 (quoting *Berkovitz*, 486 U.S. at 537); *see also Rosebush v. United States*, 119 F.3d 438 (6th Cir. 1997). The purpose of the exception is to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Gaubert*, 499 U.S. at 323.

Additionally, the government has a presumption in its favor. When established policy allows governmental agents to exercise discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id.* at 324. The plaintiff has the burden to rebut this presumption. Moreover, for a complaint to survive a motion to dismiss, "it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Id.*

## Application of Principles

In the instant case, both of the parties have pointed to written authority purportedly supporting their opposite positions on the issues involved herein. The plaintiff has alleged that BOP personnel had a smoking policy in P.S. 1640.03 which mandated certain actions, they were negligent in enforcing the policy, and the government is liable for negligence under the FTCA. The defendant has contended to the contrary, that the BOP's duties with regard to matter of enforcement were and are discretionary and policy-driven, such that the government is protected from liability.

9

As required under the aforecited Supreme Court law, this Court must first examine applicable federal statutes, regulations, and policies so as to determine whether the BOP officials have an affirmative duty to take specific action or can rely on their own discretion in fulfilling those duties. The Court begins with an examination of two regulations, 28 C.F.R. §§551.162, 551.163, which have not been addressed by either of the parties.

The version of 28 C.F.R. §551.162, entitled <u>Designated no smoking areas</u>, which applied during the relevant time period herein, from July 13, 2000 to October 31, 2003, provided in its entirety, "All areas of Bureau of Prisons facilities and vehicles are no smoking areas unless specifically designated by the Warden as set forth in § 551.163." 28 C.F.R. §551.162.[4]  The regulation referenced therein, 28 C.F.R. §551.163, is entitled <u>Designated smoking areas</u>. Both then and now it requires that "the Warden shall identify 'smoking areas'" for certain types of institutions (subsection (a)) and he "shall identify outdoor smoking areas" for other types (subsection (b)).  The regulation concludes, "To the maximum extent practicable nonsmoking inmates shall be housed in nonsmoking living quarters." 28 C.F.R. §551.163(c).

An examination of this last provision, 28 C.F.R. §551.163(c), presents a good example of how the parties can rely on the same language to support their opposite positions. Yes, nonsmokers

---

[4]  28 C.F.R. §551.162 was changed, effective July 15, 2004.  The first subsection of the revised regulation now directs that the warden "must" designate a smoking area where smoking is a part of an authorized religious activity.  The remainder of the regulation provides as follows:

> (b)(1)   The Warden may designate only outdoor smoking areas for general inmate use (that is, for smoking which is not part of an authorized religious activity).  These smoking areas must be clearly identified.

> (2)   The Warden, with the Regional Director's concurrence, may choose not to designate smoking areas for general use.  Once this occurs, the Regional Director's concurrence is required if the Warden later chooses to designate smoking areas for general use at the institution.

28 C.F.R. §155.162(b).  These words are repeated verbatim in the BOP's current program statement, P.S. 1640.04, also effective the same date.

"shall be housed in nonsmoking" quarters, but the command is qualified with the language, "[t]o the maximum extent practicable." Court must agree with the defendant that the manner and the extent to which the warden must fulfill his duties, *i.e.*, only to the extent practicable, are left up to the warden, who must deal with policy and practicalities.

In a case cited by the United States, *Santos v. United States*, 2006 WL 1050512 (5th Cir. 2006) (slip copy), the district court was presented with facts virtually identical to those herein. The court had examined the same versions of the regulations, §§551.162 and 551.163, and had concluded as follows:

> [T]he extent to which the BOP chooses to apply its resources to enforce the regulation against smoking ... and the extent to which the BOP chooses to apply its resources elsewhere ... are discretionary choices made among many alternatives.... [The] decision to implement disciplinary action is discretionary and gives the BOP room for judgment.

*Id.* at *2. The Fifth Circuit affirmed the lower court. This Court agrees with those courts' decisions when applied to the facts alleged and the law cited herein.

This Court finds that the BOP staff at FMC-Lexington, under the regulations and program statements presented herein, had discretion in fulfilling their duties with regard to ETS and, therefore, the first prong of the *Berkovitz-Gaubert* test is satisfied. Moreover, with regard to the second component of the discretionary function exception, the Court also finds that the instant case exemplifies the type of case Congress must have had in mind when it enacted the discretionary function exception. Reed herein has not carried his burden of showing that the acts/decisions by BOP personnel were *not* based on policy considerations, as the BOP's acts/decision are "inherently grounded in social, political, and economic policy." *Dykstra v. U.S. Bureau of Prisons*, 140 F.3d 791, 796 (8th Cir. 1998).

This Court's conclusion is consistent with other case law. In *Ellis v. United States*, 2006 WL 2468867 (W.D.Penn. 2006) (slip op.), the district court set out the same language of §551.163 as provided above and described the regulation as giving "explicit discretion" to the Warden. *Id.* at *6. Having found also that the stated purpose of the regulation was to protect the health of inmates and staff and that it was, therefore, presumed to be intertwined with policy considerations, both prongs of the *Berkovitz-Gaubert* test were satisfied. Accordingly, the discretionary function exception applied, and the case was dismissed for lack of subject matter jurisdiction. *Id.* at 7.[5]

Additionally, the Court's conclusion herein is consistent with case law regarding other environmental hazards at prisons and the general duties imposed on the BOP by statute. 18 U.S.C. §4042. Duties of Bureau of Prisons, provides in pertinent part:

> (a) In general. -- The Bureau of Prisons, under the direction of the Attorney General, shall--
>
> (1)    have charge of the management and regulation of all Federal penal and correctional institutions;
>
> (2)    provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;
>
> (3)    provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States;
>
> . . . .

18 U.S.C. § 4042(a). Like the regulations and program statements at issue herein, the Court notes that the statute contains mandatory language, "shall," in imposing on the BOP the statutory duty to provide suitable quarters, food, and protection for prisoners. The statute does not, however, specify

---

[5] This Court is aware that the same district court, another judge presiding, came to the opposite conclusion on similar facts, but the Court does not find the opinion in *Allen v. United States*, 2006 WL 544292 (W.D.Penn. 2006) (not reported) persuasive.

what are suitable quarters or how prisoners are best safeguarded or what subsistence consists of.

"The manner in which the Bureau fulfills this duty is, however, committed to its discretion. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976)." *Caudle v. United States*, 72 F.3d 132, **1 (7th Cir. 1995) (affirming the district court's dismissal under Rule 12(b)(1)). Similarly, "While it is true that this statute sets forth a mandatory duty of care, it does not, however, direct the manner by which the BOP must fulfill this duty." *Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997) (affirming the district court's dismissal of another injured inmate's FTCA claim for lack of subject matter jurisdiction). *See also Ortiz v. United States*, 2002 WL 1492115 (S.D. N.Y. 2002) (not reported in F.Supp.2d).

The instant situation is much like an exposure-to-asbestos-fact-pattern before another district court, in *Castor v. United States*, 883 F.Supp. 344 (S.D. Ind. 1995). After studying the statutory language and examining whether both prongs of the test for application of the discretionary function exception had been satisfied, that court wrote as follows:

> Because BOP officials exercise discretion in determining how to best protect and provide for prisoners, and because that discretion is animated by policy considerations, its decisions and actions challenged here cannot form the basis of a FTCA claim. Therefore, the discretionary function exception applies to the claims in this case and the court lacks jurisdiction over the plaintiff['s] claims.

*Id.* at 353-54. This Court adopts this same conclusion with regard to the BOP's handling of ETS exposure at Cardinal Unit at FMC-Lexington, pursuant to its general statutory duties in 18 U.S.C. §4042, its smoking-related duties set in regulations at 28 C.F.R. §551.162-63, and the delegation thereof in P.S. 1640.03.

The Supreme Court of the United States has acknowledged, "Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources,

13

all of which are peculiarly within the province of the legislative and executive branches of government." *Turner v. Safley*, 482 U.S. 78, 84-85 (1987); *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977); *see also, Hewitt v. Helms*, 459 U.S. 460, 467 (1983) (acknowledging that "prison officials have broad administrative and discretionary authority over the institutions they manage. . . ").

Consistent with the foregoing, the Court finds that the discretionary function exception to the FTCA applies to bar this prisoner-plaintiff's lawsuit, even if the BOP employees abused their discretion or were negligent in the performance of these discretionary functions. Consequently, there is no subject matter jurisdiction over this claim against the United States, and this action must be dismissed from the docket of this Court. Recovery has been specifically barred by Congress under the FTCA's statutory exceptions.

The Court offers no opinion as to whether any BOP employee was negligent with regard to measures taken to prevent or abate the ETS problem generally or with regard to this plaintiff. The Court simply does not reach a negligence analysis. Congress has decreed that such discretionary decisions are not subject to suit in cour--even if "the discretion involved be abused." 28 U.S.C. §2680(a).

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** as follows:

(1)     The motion of the United States for dismissal of the complaint for lack of subject matter jurisdiction [Record No. 13] is **GRANTED**; and

14

(2)    the instant cause of action is **DISMISSED**, with prejudice, and Judgment shall be

entered contemporaneously with this Memorandum Opinion and Order in favor of the United States.

This the _____14ᵗʰ_____ day of December, 2006.

*Joseph M. Hood*

JOSEPH M. HOOD, CHIEF JUDGE